**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **FRANK LETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 1:05CV479-A** |
| | ) | |
| **RELIABLE RUSKIN, D/B/A** | ) | |
| **RELIABLE PRODUCTS** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant, Ruskin Company, Reliable Division ("Reliable" or "Defendant"),

and respectfully submits this Memorandum of Law in support of its contemporaneous, separately-

filed Motion for Summary Judgment.

**INTRODUCTION**

This lawsuit is quite simple. Plaintiff Frank Lett ("Plaintiff" or "Lett"), an African-American

male over forty (40), alleges that his current employer Reliable discriminated against him on the

basis of race and/or age when it failed to promote him to the position of assistant supervisor, instead

choosing Stan Henderson ("Henderson"), a Caucasian male under 40.[1]  Plaintiff also claims that

another Caucasian employee - Steve Paulk - is paid more than he and that the disparity must be the

result of racial discrimination in violation of §1981.  Reliable submits that this action is due to be

---

[1]         Plaintiff brings  his denial of promotion claim under Title VII of the Civil Rights
Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1981; and the Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.

dismissed.[2]  First, Plaintiff is precluded from bringing his claims in this Court under the doctrine of judicial estoppel.  Under clear Eleventh Circuit precedent, this Court must dismiss this action since Plaintiff failed to disclose his employment discrimination claims to the bankruptcy court when he filed for Chapter 13 protection at the same time he had a charge of discrimination pending before the EEOC.  Second, even if this Court were to conclude Plaintiff is not judicially estopped, Reliable is entitled to summary judgment since Plaintiff's claims fail on their merits.  The undisputed evidence proves that Reliable promoted Henderson to assistant supervisor because it believed Henderson was better qualified and better suited for the position - a legitimate non-discriminatory reason.  Plaintiff offers no evidence that Reliable's reason is untrue or motivated by a discriminatory animus.  Furthermore, Plaintiff offers no evidence that any pay disparity between himself and Steve Paulk was the result of racial animus.  For these reasons, summary judgment is mandated.

## RELEVANT UNDISPUTED FACTS

Reliable makes air handling equipment at its plant in Geneva, Alabama.  The business has two components, an HVAC side and an architectural side.  The HVAC side includes Departments 2, 4 and 5, and there are several production lines in each department.  A few years ago - as part of a plant-wide reorganization - Departments 4 and 5 merged; the new department is currently referred to as Department 5.  (Exhibit 1, Deposition of Kenneth Taylor ("Taylor"), p. 51-52, l. 16-4)  Kenneth Taylor ("Taylor") is the supervisor over Departments 2 and 5.  (Exhibit 2, Deposition of Plaintiff Frank Lett ("Lett"), p. 53, l. 22-23)   The products built in Departments 2 and 5 are different -  in

---

[2]Plaintiff brought several additional claims, however, on August 29, 2005, this Court granted Reliable's Motion for Partial Dismissal and dismissed these additional claims.  (See Court's Order and Memorandum Doc. # 15).   The only claims which remain are a denial of promotion claim based on age and race discrimination and a pay disparity claim under §1981.

2

Department 2 one standard product is built, however, in Department 5, several specialty products are built. (Taylor, p. 128, l. 8-10; p. 127, l. 9-18)

Plaintiff has worked for Reliable for approximately thirty-two (32) years and is the lead person over Department 2.   (Plaintiff's Complaint ("Complaint"), Doc. # 1, ¶5)  As lead person, Plaintiff oversees all production lines located in Department 2.  While Plaintiff occasionally worked in other departments, he has never been a lead person or otherwise supervised employees in those departments. (Taylor, p. 129, l. 8-20, p. 98, l. 21-23; Lett p. 53, l. 3-6)

Henderson has been a Reliable employee for approximately seventeen (17) years.  (Exhibit 3, Deposition of Stan Henderson ("Henderson"), p. 8, l. 14-16). Prior to his promotion to assistant supervisor, Henderson had been a lead person in both  Departments 5 and 4 (prior to these Departments merging).   (Henderson, p. 38, l. 16; p. 40, l. 17-18; p. 44, l. 10-15; Lett, p. 94, l. 21) Henderson had also been a lead person in Department 2 on the night shift and also worked in Department 2 on the day shift when the night shift was not needed.  (Taylor, p. 98, l.3-16; p. 23, l. 7-8; Henderson, p. 17, l. 2-5; p. 38, l. 16; 40, l. 17-18).  Thus, Henderson has been responsible for overseeing employees and production lines in Departments 2, 4 and 5, the area Taylor supervised. (Henderson, p. 81, l. 20-23; Taylor, p. 57-58, l. 4-22 of p. 58; p. 98, l.3-16;  p. 130, l. 3-5)

 Although there had been no assistant supervisor over Departments 2, 4 and 5 for quite some time, Taylor consulted with HVAC production manager David Burch and decided to promote one. (Taylor, p. 27, l. 1-14; p. 24, l. 3-16; Lett, p. 90, l. 10-20; Henderson, p. 73, l. 1-22)  Taylor decided that the lead persons in those departments would be solicited.  These included Stan Henderson, Plaintiff Frank Lett, Wendall Ard, and Harmon Sellers. (Taylor, p. 27, l. 1-14; Lett, p. 92, l. 4-18; Henderson, p. 47, l. 8-21) In addition, Taylor decided to consider any other lead person who

3

approached him showing an interest in the position. Two did: Ted Hampton and Walter Newman. (Taylor, p. 27, l. 1-4)

Taylor did not interview candidates; rather, he provided them with four questions ("questionnaire") to answer and return to him in three weeks. (Taylor, p. 28, l. 21; p. 29, l. 19-23; p. 31, l. 14-16; Henderson, p. 47, l. 8-20; Lett, p. 103, l. 2-5) The four questions related directly to the assistant supervisor position and solicited each candidate's qualifications and ideas to improve the departments. (Exhibit 4, Questionaire)

Harmon Sellers (Caucasian, age 65) disclaimed all interest in the position, and Wendall Ard (Caucasian, age 48) never responded to the questionnaire - thus, these candidates were not considered. (Taylor, p. 28, l. 12-16; p.68, l. 14-23; p. 69, l. 4-7) Those who completed the questionnaire were considered: Plaintiff Frank Lett (African-American, age 51), Stan Henderson (Caucasian, age 34), Walter Newman (Caucasian, age 43), and Ted Hampton (Caucasian, age 40). (Exhibits 5, 6, 7, & 8, Responses to the Questionaire) Henderson's questionnaire response was handwritten but detailed. (Exhibit 6) Newman and Hampton's responses were typewritten and detailed. (Exhibit 7 & 8) Plaintiff's, however, were handwritten and minimal and were returned to Taylor on the last day and only after Taylor reminded him. (Exhibit 5; Taylor, p. 131, l. 1-15)

Henderson was selected for assistant supervisor on or about October 4, 2004. (Henderson, p. 45, l. 3-21;Taylor, p. 38, l.19) On November 8, 2004, Plaintiff filed an EEOC Charge of Discrimination. (Exhibit 9, Charge of Discrimination). On January 7, 2005, Plaintiff filed for Chapter 13 protection in the United States Bankruptcy Court for the Middle District of Alabama. (Exhibit 12, Voluntary Bankruptcy Petition). Although Plaintiff included another lawsuit in his bankruptcy documents, Plaintiff did not list his EEOC charge. (Id., *passim*) On February 25, 2005,

the EEOC issued a no-cause determination and sent Plaintiff a Notice of Right to Sue.  (Exhibit 10, Right to Sue Notice)

On May 26, 2005, Plaintiff filed this lawsuit.  (Complaint, *passim*)  On March 28, 2006, at Plaintiff's deposition Defendant discovered Plaintiff had failed to list the EEOC charge or this lawsuit on the bankruptcy documents.  (Lett, p. 31, l. 13)   On March 28, 2006, Defendant propounded Request for Admissions relating to Plaintiff's  failure to list the EEOC charge on his bankruptcy documents.  (Exhibit 14, Defendant's Request for Admissions) That same day, over a year after he filed for bankruptcy and ten (10) months after he filed this lawsuit, Plaintiff amended his bankruptcy documents to include the EEOC Charge.  (Exhibit 15, March 29, 2006 Amended Schedule of Assets and Statement of Financial Affairs)

## ARGUMENT

### I.      Plaintiff's Claims Are Barred by the Doctrine of Judicial Estoppel.

Equity estops Plaintiff's  claims in this lawsuit since they are inconsistent with the position he took in his bankruptcy case.  Burnes vs. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002). In is undisputed that Plaintiff filed an EEOC Charge and pursued this lawsuit prior  to and during the pendency of his Chapter 13 case, but that he never listed these claims on his Statement of Financial Affairs or Schedules of Assets until after Defendant discovered the omission at Plaintiff's deposition.  As such, summary judgment is proper.

The bankruptcy code requires a debtor to list all of his assets - including any potential legal claims - when seeking to have his debts discharged or discounted through bankruptcy. 11 U.S.C. § 521(1). Failure to do so can bar such actions later.  As the Eleventh Circuit held in Burnes, *supra*:

> "A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets to the bankruptcy court. [citations omitted].  The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change.

Id. at 1286.

The Eleventh Circuit explained in Burnes that it considers two factors in determining the applicability of judicial estoppel.  First, it looks for inconsistent positions that were made under oath in a prior proceeding.  Second, it looks for evidence that such inconsistency was calculated (not inadvertent) so as to make a mockery of the judicial system.[3]  Id.

Both factors are present here.  First, it is undisputed that Plaintiff took an inconsistent position under oath in a prior proceeding.  Plaintiff filed for Chapter 13 bankruptcy on January 7, 2005. (Exhibit 12)[4] Plaintiff had previously filed his EEOC charge on November 18, 2004. (Exhibit 9)  Plaintiff's Schedule of Assets and the Statement of Financial Affairs each required him to identify any administrative or legal claims - he failed to identify his EEOC charge or the claims now brought in this lawsuit even though he listed another lawsuit in his Statement of Financial Affairs. (Exhibit

---

[3]        Numerous courts have held that a plaintiff who failed to list his legal claims as assets in bankruptcy court is barred from thereafter asserting such claims.  See Barger v. City of Cartersville, 348 F.39 1289 (11th Cir. 2003) (plaintiff filed an employment discrimination lawsuit, filed for bankruptcy, in which he failed to disclose his lawsuit, and ultimately received a complete discharge of his debts in bankruptcy); De Leon v. Comcar Indust., 321 F.3d 1289 (11th Cir. 2003) (plaintiff filed an EEOC Complaint and then filed for and obtained Chapter 13 bankruptcy protection in which he failed to disclose his employment claims); Burnes, 291 F.3d at 1284 (plaintiff filed for Chapter 13 relief and  filed an EEOC Charge of Discrimination against his employer).  See also  Chandler v. Samford Univ., 35 F.Supp. 2d 861 (N.D. Ala. 1999); Traylor v. Jean Evans Ford, LLC, 185 F. Supp. 2d 1338, 1340 (N.D. Ga. 2002).

[4]        For the convenience of the Court, attached as Exhibit 11 is the PACER docket report for Plaintiff's bankruptcy case.  (The relevant bankruptcy documents that have been attached as exhibits to this memorandum include Doc. # 1, 3, 23, 27 and 28)

12)  Both documents contained declarations signed by Plaintiff, under penalty of perjury, attesting that the information contained therein was true and correct.  (Id.)

Second, Plaintiff's non-disclosure clearly was not inadvertent.  At the very moment Plaintiff was signing his bankruptcy petition he was participating in an EEOC investigation of his recently-filed discrimination charge.  He received his right to sue notice less than two months after declaring bankruptcy; he filed this lawsuit only three months after that.  Yet he never moved to amend his bankruptcy petition.  Neither can he contend this was an innocent oversight because on March 1, 2006 he amended his bankruptcy petition to include more debts, but never mentioned this action as an asset.  (Exhibit 13, March 1, 2006 Amendment to Schedule of Assets; see also Exhibit 11)  This Court can easily infer from the record that Plaintiff's intent was "to make a mockery of the judicial system."  De Leon, 321 F.3d at 1291 (Eleventh Circuit holding "[b]ecause De Leon certainly knew about his claim and possessed a motive to conceal it because his amount of repayment would be less, we can infer from the record his intent 'to make a mockery of the judicial system.'").  One fact standing alone - Plaintiff disclosed this claim in bankruptcy only after being forced to admit his concealment through discovery in this case - supports a conclusion that the omission was deliberate.  Taking all facts together, the conclusion is inescapable.

While Plaintiff may argue that he should not be judicially estopped because on March 29, 2006, he amended his bankruptcy papers to include his EEOC Charge, the Eleventh Circuit has emphasized:

> Allowing [Plaintiff] to back up, reopen the bankruptcy case and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.

Burnes, 291 F.3d at 1288.  See also De Leon, 321 F.3d at 1291-92; Barger, 348 Fd. at 1297.

Plaintiff's eleventh hour amendment does not allow him to avoid the consequences of his earlier

misrepresentations; quite the contrary - it constitutes an admission that he violated the principles of

equity.  This Court need not even consider the other basis for summary judgment - this alone is

sufficient to dismiss the Complaint in its entirety with prejudice.

**II.     Plaintiff's Failure to Promote Claim Fails As a Matter of Law.**

Even if this Court finds Plaintiff is not judicially estopped from bringing his claims, his

promotion claim would still fail.  Reliable has established an undisputed, legitimate, and non-

discriminatory reason for promoting Henderson:  Reliable considered Henderson better qualified and

better suited for the position.  Because Plaintiff has no direct evidence of discrimination, the shifting

burden of proof standard is appropriate here.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-

03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[5]

**A.     Reliable Had a Legitimate Non-Discriminatory Reason for Promoting Henderson
and Plaintiff Cannot Establish that Reason was a Pretext for Discrimination.**

Reliable does not concede that Plaintiff can make out a prima facie case, however, assuming

he could, Reliable has articulated a non-discriminatory reason for promoting Henderson.    Thus,

Plaintiff carries the burden of establishing pretext.  He cannot meet it, because he can offer no

evidence that either race or age played any role in the decision to promote Henderson.

---

[5]      The burdens of proof are the same of each of Plaintiff's claims, be it under Title
VII, the ADEA, and/or § 1981.   See Robinson v. Regions Financial Corp., 242 F.Supp.2d 1070
(M.D. Ala. 2003).

8

The pretext inquiry should focus on whether the Defendant intentionally discriminated against the Plaintiff. Collado v. United Parcel Service, Co., 419 F.3d 1143, 1153 (11th Cir.2005). A plaintiff cannot prove pretext by simply showing that he was better qualified. Cooper v. Southern Co., 390 F.3d 695, 729 (11th Cir.2004) ("[T]he crucial question here is not whether Cooper fulfilled the requirements, but whether Howard honestly believed that Cooper did not meet the criteria."). Further, it is well-settled that companies have the right to make their own business decisions, and that discrimination lawsuits are not vehicles for either plaintiffs or courts to "second guess" those decisions. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1471 (11th Cir. 1991); Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir.1999) (courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

Until recently, when comparing qualifications in the promotion context the Eleventh Circuit explained the standard as follows: "[D]isparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." Id. In Ash v. Tyson Foods, Inc., _ U.S. _, 126 S.Ct. 1195, _ L.Ed.2d _ (2006), the Supreme Court opined that "[t]he visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications." 126 S.Ct at 1197. Without defining what standard should govern, the Supreme Court cited various other standards with approval, including one employed by the Eleventh Circuit: that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Id. Thus, it appears that the Ash decision

9

backed away from the Eleventh Circuit's colorful description of the standard while affirming the standard itself.

This Court appears to agree. In <u>Drakeford v. Alabama Coop. Extension</u>, __ F. Supp.2d __, 2006 WL 871139 (M.D. Ala., April 6, 2006) (Albritton, J.), this Court held:

> The Supreme Court's rejection of the "slap you in the face" standard is really an issue of language and clarity, rather than a substantive change in the legal threshold required to prove pretext. ... [T]his court will abandon the "slap you in the face" language, but not the legal standard it describes.

<u>Drakeford</u>, 2006 WL 871139 at *2-3.  Thus, while the language "slap you in the face" is no longer applicable, the standard it describes clearly is.

1.     <u>Plaintiff Admits Henderson was Just as Qualified as Plaintiff for the Assistant Supervisor Position.</u>

Any assertion by Plaintiff that he was more qualified than Henderson would contradict his own testimony.  At his deposition he conceded Henderson's qualifications:

> Q: Do you believe Mr. Henderson was qualified for the job?
> A: Sure, just as well I was." (Lett p. 106, l. 5-7)

Plaintiff also testified:

> Q: Do you believe you were more qualified?
> A: I am just as qualified as he are (sic)."  (Lett p. 115-116, l. 21-1)

As such, Plaintiff cannot show that a reasonable person would find great disparities between his qualifications and those of Henderson - he admits Henderson is just as qualified.

Furthermore, Plaintiff cannot dispute that Reliable genuinely believed Henderson was the most qualified applicant.  (Lett p. 115, l. 10-20)    Henderson had a broader knowledge of the production lines under Taylor's supervision since he had been a lead person in Departments 2, 4 and 5; Plaintiff had only been a lead person in Department 2.  (Taylor, p. 98, l. 21-23; p. 129, l. 12; Lett,

p. 108-09, l. 8-2; p. 161-62, l. 20-2)    The products built in Departments 4 and 5 were considered more specialty products compared to the standard product built in Plaintiff's Department 2. (Henderson, p. 81, l. 16-19; Taylor, p. 127, l. 9-18; p. 128, l. 8-10; p. 130, l. 3-5)    Henderson was considered to have better written communication skills than Plaintiff.  (Taylor, p. 96, l.1-2, 9-23) At times when Taylor had been out of the plant, Henderson had a history of seeking out additional responsibilities, demonstrating the initiative to help run the production lines.  (Lett, p. 110-11, l. 17-6; Henderson, p. 112, l. 1-21)

The disparity in years of service - Plaintiff's 30 years against Henderson's 17 - does not support an inference of discrimination.  It has never been Reliable's practice to promote a more senior employee over one it considers better qualified.  (Exhibit 16, Deposition of George Helms ("Helms") Helms, p. 87, l. 4-19)    The record establishes that none of the lead person positions require more than a few months to learn; there is nothing that 30 years' tenure would do to better prepare a candidate that 17 years would not do as well.  (Helms, p. 87, l. 6-17) See Cofield v. Goldkist, Inc., 26 F3d at 1264 (11th Cir. 2001) (any disparity in qualifications between a candidate with 15 years of managerial experience and 30 years experience with the company and a candidate with 8 years of managerial experience so slight as to fail to establish reason for non-promotion was pre-textual).  Henderson has no counseling or discipline write-ups in his file.  (Henderson, p. 102, l. 4-8) Plaintiff has some counseling write-ups, has fathered a child with one of his subordinates and has an admitted reputation for fathering out-of-wedlock children in the community.[6]  (Exhibit 17,

---

[6]        Plaintiff testified to a joke in his department, "I got several womens (sic) in my department going to have babies, and every time one have a baby they say its my baby.  That's all of them, black, white, it don't matter, they just speculate that on all of them."  (Lett p. 27-28, l. 20-22; p. 85,  l. 2-23)

Plaintiff's Counseling Write-ups)  This Court can take judicial notice of the potential legal problems

a company faces when it ignores such a reputation by a potential supervisor, and it is well settled that

such reasonable considerations are not subject to second-guessing by our judicial system.  <u>Damon</u>,

196 F.3d at 1361.

It is quite clear Reliable made the right decision when it promoted Henderson.  But even if

a factfinder were to disagree - to believe Plaintiff would have been an equally viable choice - this

is no grounds for liability.  Plaintiff can offer <u>no facts</u> to support his belief that Henderson was

promoted because of his race and/or age.  (Lett p. 117, l. 2-15; p.120, l. 5-9) Summary judgment is

mandated.

2.    <u>The Fact that Reliable Did Not Post the Job Opening for the Position of<br>Assistant Supervisor Does Not Create an Inference of Discrimination.</u>

While Plaintiff complains that Reliable posts some jobs but not all, there is nothing in the

ADEA or Title VII that requires an employer to post job openings.  (Complaint, ¶ 7) <u>See Chapman</u>

<u>v. A1 Transport</u>, 229 F.3d 1012, 1030 (11th Cir. 2000) ([F]ederal courts 'do not sit as a super-

personnel department that reexamines an entity's business decisions.)  Reliable's job posting policy

does not require that all jobs be posted.   (Helms, p. 23, l.18; 25, l. 13-188; Exhibit 18, Posting

Policy) As a general rule, leadership positions are not posted while non-leadership positions usually

are.  If it is clear to management that only one person is a suitable candidate to fill a job opening, that

person normally will be offered the position without a job posting.   (Helms, p. 22-23, l. 21-3; p. 25,

l. 1-13) On the other hand, if any number of candidates might be suitable (which is usually the case

in non-leadership positions) the job is posted for any who are interested.  Plaintiff himself benefitted

from this policy - he was promoted to lead person in Department 2 without a job posting -

12

management believed he was the right person for that job so no other candidates were considered. (Helms, p. 23, l. 4-18; Lett, p. 51, l. 9; p. 52, l. 14-19)

In this case, the position of assistant supervisor was not posted.  However, it is undisputed that Plaintiff was solicited for the position and provided an opportunity to apply for it.  (Taylor, p. 27, l. 1-14; p. 130, l. 6-14, 22-23, p. 131, l. 1-15) Thus, the posting policy is irrelevant  to the promotion at issue - Plaintiff was already a candidate.

3.    Choosing a Candidate Based in Part on Subjective Criteria Does Not Create An Inference of Discrimination.

Plaintiff also complains that Reliable uses subjective criteria to choose candidates for promotions although he fails to explain how the use of subjective criteria constitutes discrimination. (Complaint, ¶ 7) Using subjective criteria does not establish pretext.  Denney, 247 F.3d at 1185. As the Eleventh Circuit has held,

> It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation. ... Subjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions.

Id.  Plaintiff has provided no evidence that subjective hiring criteria were used as a cover for discrimination.  Furthermore, Plaintiff cannot dispute that Taylor honestly believed Henderson was the right man for the job. (Lett p. 115, l. 10-20) Even if Plaintiff believes he should have received the assistant supervisor position, that subjective belief is insufficient to defeat summary judgment. See Price v. Marathon Cheese Corp., 119 F.3d 330, 337 (5th Cir. 1997) ("To establish pretext, a plaintiff cannot merely rely on his subjective belief that discrimination has occurred.").  Since even

Plaintiff concedes Henderson's qualifications, and since the record evidence is undisputed that Henderson had broader experience, summary judgement is appropriate.

### C.    Plaintiff's Pay Differential Claim under §1981 Fails As a Matter of Law.

Finally, Plaintiff alleges Reliable discriminated against him by paying him less than similarly-situated white employee. (Complaint, ¶ 9)  The appropriate framework for evaluating a race-based pay discrimination claim is the same as established in McDonnell Douglas. Miranda v. B&B Cash Grocery Store, Inc., 975 F.3d 1518, 1528 (11th Cir. 1992).  In order to prove pretext, the plaintiff must demonstrate that a discriminatory reason more likely than not motivated the employer to pay him less, or that the employer's explanation is not worthy of belief. See Ledbetter v. Goodyear Tire & Rubber Co., 421 F.3d 1169,1186 (11th Cir. 2005).  Furthermore, an employer who treats two employees differently because of an honest mistake does not violate the discrimination laws. Alexander v. Fulton County, Ga., 207 F.3d 1303, 1339 (11th Cir.2000) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race."); Wolf v. Buss (America) Inc., 77 F.3d 914, 919 (7th Cir.1996) ("Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.").

At his deposition, Plaintiff pointed to one employee - Steve Paulk - whom he believed was paid at a higher hourly rate.  (Lett p. 164, l. 16-17)  The disparity was not the result of race discrimination but an honest mistake.   The indisputable facts relating to how the error was made are explained below.

Employees are eligible for annual merit increases, effective on their anniversary.  (Exhibit 19, Declaration of George Helms ("Helms Decl."), ¶3).   Whenever pay grade increases have gone

into effect, George Helms' practice is to calculate those increases and enter them onto salary adjustment forms.[7] (Id.) Employees are subject to maximum caps on their pay grade. (Id., ¶4) In some cases, when a percentage pay increase would otherwise exceed the maximum, an employee will be increased only to that maximum, which is the "top pay" for their position. (Id.)    During Plaintiff's deposition on March 28, 2006, which Helms attended, Plaintiff produced a copy of Paulk's salary adjustment form which showed that beginning February 2004, Paulk's rate of pay was $14.73 per hour - twelve cents more than Plaintiff was making at that same time. (Id., ¶5)    After Plaintiff's deposition Helms investigated the pay history of both Paulk and Plaintiff and discovered that a mistake had been made - over a period of twenty months, Paulk had received twelve cents more per hour than he should have been receiving. (Id., ¶6)    In February 2004, when calculating Paulk's annual pay increase at his anniversary, Helms inadvertently failed to recheck Paulk's percentage increase against top pay for his grade. (Id., ¶7) Had he done so Helms would have seen that the increase exceeded top pay by twelve cents and capped his increase at the top pay level. This oversight was unintentional. (Id.) As a result, Paulk was paid twelve cents more an hour than he should have been paid, and twelve cents more an hour than Plaintiff was paid. (Id., ¶8) At all times, Plaintiff's pay rate was exactly what it should have been. (Id.) The pay disparity corrected itself in November 2005 when Plaintiff was awarded an annual merit increase at his anniversary. (Id., ¶10) At that time, Plaintiff's rate of pay increased to $15.11, higher than Paulk. (Id.) As such, the pay disparity no longer exists and has not existed since November 2005. (Id.)

---

[7]    Helms is the Director of Human Resources and responsible for calculating employee pay.

15

Plaintiff can offer no evidence that questions the veracity of Reliable's non-discriminatory reason for the pay disparity - an honest mistake on the part of Helms - or reveals any discriminatory animus.  It was not until Plaintiff's deposition that Helms was notified of the pay disparity and that disparity was unintentional. (Id., ¶11-12)   Summary judgment is appropriate.

**CONCLUSION**

Plaintiff is judicially estopped from bringing his claims in this Court.  However, even if judicial estoppel did not apply, the undisputed evidence shows that Reliable promoted Henderson for legitimate, non-discriminatory reasons.  The temporary pay disparity was due to an honest mistake and Plaintiff was actually paid at the correct rate.  This Court should grant summary judgment for Reliable and dismiss all of Plaintiff's claims with prejudice and at his cost.

s/  Elizabeth P. Odom
One of the Counsel for Defendant

Jonathan S. Harbuck (Ala. Bar No. ASB-0906-U70J)
Elizabeth P. Odom (Ala. Bar No. ASB-8215-L64O)
THE KULLMAN FIRM
A Professional Law Corporation
600 University Park Place, Suite 340
Birmingham, Alabama  35209-6786
(205) 871-5858 (t)
(205) 871-5874 (f)

\

## CERTIFICATE OF SERVICE

_____I hereby certify that on April 27, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael Quinn, Esq.
Allison W. Lowell, Esq.
WIGGINS, CHILDS, PANTAZIS & QUINN LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203

And I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

None

/s/ Elizabeth P. Odom
Elizabeth P. Odom