## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **FRANK LETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 1:05-CV-479-A** |
| | ) | |
| **RELIABLE RUSKIN, d/b/a** | ) | |
| **RELIABLE PRODUCTS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.    Introduction

Plaintiff, Frank Lett ("Lett" and/or "Plaintiff") contends that Defendant, Reliable Ruskin d/b/a Reliable Products ("Reliable" and/or "Defendant"), discriminated against him in violation of Title VII, 42 U.S.C. § 1981, and 29 U.S.C. § 621, *et seq*.  Such discrimination on the part of the defendant was based on his race and age, which resulted in Lett being wrongfully denied the promotion to Assistant Supervisor.  For the reasons explained more fully below, Defendant's Motion for Summary Judgment is due to be denied because Plaintiff has shown that material issues of fact exist indicating that Reliable is in violation of Title VII, 42 U.S.C. § 1981, and 29 U.S.C. § 621, *et seq*.  Because genuine issues of material fact exist, a jury should determine whether Defendant has violated the law by discriminating against Plaintiff.  As will be discussed in detail below, Plaintiff's claims should not be judicially estopped from going forward because Plaintiff lacked the requisite motive to deceive the Court.

1

Viewing the evidence in the light most favorable to the non-moving party, resolving disputed issues of fact in favor of the non-moving party, and drawing all reasonable inferences in favor of the non-moving party, the record reveals the following:

**II     STATEMENT OF FACTS**

Frank Lett, an African-American male, was hired by Reliable in 1973 at the age of 19 and began working as an assembler in Department 4. (Deposition of Frank Lett ("Lett") p.14 lns.1-2,[1] p.39 lns.4-6; p.47 ln.1, Exh. 1).[2] In October of 1989 Plaintiff was promoted to saw operator in Department 4. (Lett p.47-8 lns.22-2; Exh. 1). He was transferred to the tack welder's position in Department 4 in May 1993. (Lett p.50 lns.15-17, p.51 lns.4-7; Exh 1). Lett was subsequently promoted to the Department 2 lead-man position in 1994, which is the position he currently holds. (Lett p.52 lns. 11-13).

As a lead-man Lett is responsible for supervising approximately thirty employees. (Lett p.54 lns.18-21). Lett ensures that his employees have the appropriate materials available to them in order to complete the days assignments, ensure that the proper employees are performing the tasks they need to perform as to ensure the products are produced in a timely fashion, and that the orders are shipped out pursuant to the work orders. (Lett p.53 lns.7-21, p.54 lns.10-17). Lett is also responsible for completing employee evaluations for the thirty employees he supervises. (Lett p.53 lns.12-17).

Frank Lett is supervised by Kenny Taylor, a white male who is 39 years old. (Lett p.53

---

[1]Lett testified that his date of birth is June 21, 1954.

[2]Plaintiff is relying upon the copies of depositions submitted by Defendant in an effort to reduce duplicate submissions of materials into this Court.

2

lns.22-23; Deposition of Kenneth Taylor ("Taylor") p.7 lns.14-15).  Taylor was hired by Reliable

in 1989 as a saw operator in Department 4.  (Taylor p.10 lns.2-7).  Taylor was promoted to lead-

person in Department 4 in 1997.  (Taylor p.14 lns.10-12).  Prior to his promotion to Supervisor

over Departments 5 and 2 in 2001,[3] Kenny Taylor had served in the capacity of Assistant

Supervisor over the same departments since 1999.  (Lett p.66 lns.2-4; Taylor Depo. p.53 lns.14-

23).  Taylor testified that he has never worked as an assembler in Department 5 prior to his

promotion.  (Taylor p.16 lns. 21-23).  To date, Taylor has been employed for a total of 17 years.

Stan Henderson is a 34 year old white male who is also one of Lett's supervisors since his

promotion to the assistant supervisor position.  (Lett p.62 lns.3-10; Deposition of Stan Henderson

("Henderson") p.71 lns.14-15).  Henderson was hired by Defendant in 1989 as an assembler in

Department 4.  (Henderson p.8-9 lns.16-13).  In December 1992, Henderson left Reliable to work

for Magna Tech assembling light ballasts.  (Henderson p.10-11 lns.23-21, p.12 lns.12-16).

Henderson returned to Reliable in June of 1993.  (Henderson p.15 ln.23).    In approximately

1995 Henderson was selected to work as a lead-person in Department 2 over the night shift

which ran for 3-5 months out of the year, depending upon the volume.  (Henderson p.18 lns.6-6,

p.19 lns.18-23).  Henderson would return to the assembler's position during the remaining

months of the year.  (Henderson p.20 lns.8-17).  Henderson was promoted to a full time lead-

person over Department 4 in 1999.  (Taylor p.23 lns.9-18; Henderson p.25 lns.11-16).  In

approximately 2002-03, Henderson became lead-person over Department 5.  (Taylor p.54 lns.1-

---

[3]Departments 4 and 5 merged during a company-wide reorganization plan.  The two
departments are now collectively known as Department 5.  *See* p.2 Def. Mo. for Sum. J.

11).  Henderson was promoted to the position of Assistant Supervisor in October 2004. (Henderson p.47 lns.3-5).  Until Henderson was promoted to assistant supervisor, he had never supervised more than "ten to twenty" at any given time.  (Taylor p.90 lns.16-20, p.125-26 lns.17-2; Henderson p.61 lns.8-12).  To date, Henderson has been employed by Defendant for sixteen years and three months.

Prior to the selection of Henderson to the assistant supervisor position, Taylor distributed a four-question questionnaire to the lead-persons in Taylor's departments.  (Taylor p.27 lns.1-18).  However, Taylor did not rely on the answers to these questions in deciding who to place in the Assistant Supervisor's position.  (Taylor p.37 lns.20-23).  Taylor stated that he made his ultimate decision to place Henderson into the position based on his work experience and written communication skills.  (Taylor p. 95-96 lns. 13-8.)  Although, Taylor never investigated Lett's relevant work experience prior to making his decision to promote Henderson, as he was unable to articulate Lett's work experience, except that Lett had been the lead person in Department 2. (Taylor p.13 lns.5-7, p.39 lns.19-22, p.40 lns.5-21, p.103 lns.9-17).

Lett was qualified for the position of Assistant Supervisor over Departments 2 and 5/4. (Taylor p.73 lns.20-23).  The job duties of the Assistant Supervisor are to supervise employees: "chas[e] down orders, ... check up on orders, making sure they are being worked on, shipping, the paint shop, orders that have not been shipped that day, he has to help me track those down to find out why they have not been shipped."  (Taylor p.84 lns.6-13).  In the absence of the supervisor, the position also requires the assistant supervisor to report hours and ensure that employees are following the work orders submitted, with employees in the proper positions and completing the work in the proper order.  (Taylor p.84 lns.13-18).

4

No interviews were conducted prior to placing Henderson into the assistant supervisor position, and this position was not posted. (Lett p.102 lns.5-7, p.102-03 lns.23-2; Taylor p.76 lns.8-13; Henderson p.119-20 lns.11-2). In fact, throughout Taylor's employment, Taylor has never seen a supervisor job posted. (Taylor p.76 lns.18-20). There are no African American employees in management, and there have never been any throughout either Taylor or Lett's employment. (Taylor p.49 lns. 14-18; Lett p.119 lns.1-2)

Throughout his employment history with Reliable, Lett has had experience working in a variety of areas throughout the plant by working overtime on the weekends and assisting other departments within the company during the regular work week when his work was complete. (Lett p.43 lns.20-21, p.44 lns.5-21, p.53 lns.3-6). Reliable divided the company into the HVAC side and the Architectural side in approximately 2000 after Tompkins took over the company. (Lett p.50 1-9, p.56 lns.20-23, p.57 lns.14-15). Prior to this time, the company had not been divided into such defined areas. (Lett p.49 lns.7-15). Despite the name changes, the areas that existed before are still in operation and functions as one big company which produces different types of residential and commercial grills for air handling equipment. (*Id.*; *see also* Lett p.45 lns.5-13).

Steve Paulk, a white male, who was a lead-person for approximately the same amount of time that Lett had been a lead-person, was paid more than Lett. (Lett p.164 lns.10-19; *see also* Exb.1; Exb.2). Lett was told by Taylor that he had reached top-pay in his position of lead-man, however Paulk, who was also a lead-man was being paid more. (Lett p.203 lns.18-23, p.204 lns.4-22).

Plaintiff filed an EEOC charge of Discrimination on October 4, 2004 following

5

Henderson's promotion into the Assistant Supervisor's position. *See* Def. Exb.9. On January 7, 2005 Plaintiff filed for Bankruptcy under Chapter 13 in the Middle District of Alabama. *See* Def. Exh. 12. On May 26, 2005 Plaintiff filed the instant lawsuit. On March 29, 2006, Defendant propounded Request for Admissions relating to Plaintiff's Bankruptcy file. *See* Def. Exb. 14.[4] Plaintiff amended his Schedule B on March 29, 2006. *See* Def. Exb. 15.

II.    **THE DEFENDANT'S PROPOSED APPLICATION OF THE DOCTRINE OF JUDICIAL ESTOPPEL IS INAPPROPRIATE TO THE FACTS OF THIS    MATTER.**

A.    **Defendant Waived The Right To Assert Judicial Estoppel By Failing To Plead    That Issue**

Reliable waived its right to assert the affirmative defense of judicial estoppel. Federal Rule of Civil Procedure Rule 8(c) requires a defendant to affirmatively set forth all defenses, including estoppel, in its answer to the complaint. Fed.R.Civ.P. 8. Generally, failure to plead an affirmative defense results in a waiver of the defense. *Troxler v. Owens-Illinois, Inc.*, 717 F.2d 530, 532 (11th Cir. 1983); *Freeman v. Chevron Oil Co.*, 517 F.2d 201, 204 (C.A.La. 1975). An affirmative defense "must be pleaded in the answer in order to give the opposing party sufficient notice of the defense and the ability to gather proper evidence and develop arguments to refute the defense." *Florida Health Services Center v. Humana Medical Plan, Inc.*, 190 F.Supp.2d 1297, 1304 (M.D.Fla. 2001).

Reliable filed their answer to the plaintiff's complaint on June 13, 2005. Defendant failed to raise estoppel as a defense in this answer. *See* Def. Ans., Doc. # 4. In fact, counsel is not aware of any instance in which Reliable raised the issue of judicial estoppel in regards to

---

[4]Please note the Certificate of Service which states that Defendant's Request for Admission was served on March 29, 2006 the same date Plaintiff amended his Schedule B.

Plaintiff until the defendant filed its motion for summary judgment.  Therefore, Reliable has clearly waived judicial estoppel as a defense to Plaintiff's claims.

    **B.**    **The Application of Judicial Estoppel Is Inappropriate On These Facts**

Reliable is asking the Court to find that the plaintiff intended to "make a mockery of the judicial system" based on the fact that his EEOC charge was not listed as an asset on the Chapter 13 Schedule B and the Schedule B was not amended immediately as to disclose this lawsuit.. The case law cited by Defendant – and none of the case of law of which the plaintiff is aware – supports such a sweeping finding on these facts alone.  The mere fact that the Chapter 13 Schedule B initially submitted by the plaintiff did not  include the EEOC charge or this cause of action as an asset is an insufficient basis on which to apply the doctrine of judicial estoppel and thereby bar the plaintiff from pursuing his claims against the defendants in distinct proceedings.[5]/[6]

---

[5]  To the extent that Defendant is asking the Court to rule as a matter of law that the plaintiff is judicially estopped from pursuing his claims for injunctive relief in addition to his claims for backpay, then such a request overreaches even the broadest reading of the existing case law.  To the extent Defendant has cited any case law for the proposition that the Court might exercise its discretion and find that the plaintiff is judicially estopped from pursuing his claims for backpay, those same cases uniformly – and without exception – support the notion that the plaintiff can proceed with any claims for injunctive relief. *See e.g., Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1289 (11th Cir. 2002)("We conclude that [the debtor's] undisclosed claim for injuctive relief offered nothing of value to the estate and was of no consequence to the trustee or the creditors...[therefore h]e may pursue his claims for injunctive relief.").  The plaintiff's "claim for injunctive relief...would have added nothing of value to the bankruptcy estate even if she disclosed it.  Therefore, like the plaintiff-appellant in *Burnes*, judicial estoppel does not prohibit [her] from pursuing any claims for injunctive relief that she may have.  *Barger v. City of Cartersville, Georgia*, 348 F.3d 1289, 197 (11th Cir. 2003)

[6]Please see attached, Exh. 3.  Wherein the Court ruled that even where the plaintiff had filed his lawsuit and twenty-one days later filed for bankruptcy, but failed to list the lawsuit as an asset until the Schedule B was amended after the deposition of the plaintiff, the plaintiff was not found to have "made a mockery of the judicial system."  The Court reasoned that the

The Supreme Court has noted that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)(citations omitted).  In deciding *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282 (11th Cir. 2002), the Eleventh Circuit relied upon *In the Matter of Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999), in which the Fifth Circuit stated that "[m]ost Courts have identified at least two limitations on the application of the doctrine: (1) it may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one; <u>and</u> (2) that party must have <u>convinced the court</u> to accept that previous position." *Id.* at 206 (emphasis added).  "[T]he doctrine of judicial estoppel applies in situations involving <u>intentional</u> contradictions, not simple error or inadvertence."  *Id., See also American National Bank of Jacksonville v. Federal Deposit Insurance Corp.,* 710 F.2d 1528, 1536 (11th Cir. 1983) (explaining that "judicial estoppel is applied to the calculated assertion of divergent sworn positions")(emphasis added); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 362-63 (3rd Cir. 1996) (explaining that "the doctrine of judicial estoppel does not apply when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court. An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing.") (internal quotation and citation omitted); *In the Matter of Cassidy,* 892 F.2d 637, 642 (7th  Cir. 1990) (explaining that judicial estoppel should not be used "where it would work an injustice, such as where the former position was the product of

---

contradictory positions taken by the plaintiff were not intentional, and Plaintiff lacked the motive to conceal the lawsuit on the basis of filing under Chapter 13.  Further, and seemingly most importantly, the Court found that because Plaintiff had amended his Schedule B to include the lawsuit he should not be judicially estopped from pursuing his claims.

inadvertence or mistake").

In order to apply the doctrine of judicial estoppel to Lett's claims , Reliable bears the burden of demonstrating that (1) the information defendant alleges was omitted was actually requested by the bankruptcy court whether via the bankruptcy schedules or some other means, (2) the plaintiff omitted the information in response to a clear request by the bankruptcy court (3) as a result of this omission, the bankruptcy court adopted the position defendants now attribute to the plaintiff and (4) that such failure to disclose was intended to "make a mockery of the judicial system." *Burnes*, 291 F.3d at 1285. Reliable has not produced sufficient evidence on any of these issues, therefore judicial estoppel is inappropriate.

Even if this Court decides that Lett did take inconsistent positions with regard to his bankruptcy, judicial estoppel is an unduly burdensome penalty because his inconsistent position was inadvertent and his motive was not to "make a mockery of the judicial system." This is evidenced by Lett's amendment to the Schedule B prior to Defendant filing its motion for summary judgment.

The factors the Court should consider when determining whether to apply judicial estoppel "are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." *Barger.* at 1294 (quoting *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1284 (11th Cir. 2002)). Therefore, courts cannot make a blanket application of judicial estoppel to discrimination claims not originally listed in a bankruptcy petition. Rather, courts must do as the plaintiff urges and look at each situation on a case-by-case basis. When the proper analysis is performed, the only answer is to deny the defendant's Motion for Summary Judgment on the issue of judicial

estoppel.

The court in *EEOC v. Apria Healthcare Group, Inc.*, 222 F.R.D. 608 (E.D.Mo. 2004) noted that "[t]his Court is not convinced that a Chapter 13 debtor-in-possession has a motive to secret assets, given that the creditors are repaid out of the debtor's income." *Id.* at 613 fn. 3. The present debtor did not have a motive to conceal this lawsuit from the bankruptcy court because the existence of a pending administrative charge and potential lawsuit was unlikely to impact the payment terms of the plaintiff's payment plan. The speculative nature of lawsuits, combined with the lack of the potential for a windfall of money damages would likely have prevented the trustee from pursuing this cause of action as a party. The plaintiff disclosed to his bankruptcy attorneys the existence of his pending administrative charge and lawsuit prior to the defendant filing its Motion for Summary Judgment. *See* Def. Exb.13. The plaintiff has made a good faith attempt to pay back his debts and he is repaying his debts in full, without a discount. *See* Exb. 4.

Reliable takes the position that *Burnes* and its progeny create an bright line rule that whenever a Chapter 13 debtor does not include a pre-petition administrative charge in his bankruptcy schedules he should always be judicially estopped from maintaining a claim for monetary damages. This is not what *Burnes* or the related cases say.[7] These cases all say that a District Court can exercise its discretion and infer intent in certain circumstances. *Burnes v. Pemco,* 291 F.3d 1282, 1288 (11th Cir. 2002). Allowing district courts to exercise discretion and infer intent in certain circumstances does not constitute a bright-line rule that judicial estoppel must be applied. Therefore, the Court must look at all of the factors in a given case and see what

---

[7] In fact, the Eleventh Circuit stated in *Parker* that it was questionable as to whether judicial estoppel was correctly applied in *Burnes*. *Parker v. Wend's Int'l Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004).

actually happened.  It is unfair for courts to apply judicial estoppel in a blanket manner which is not consistent with the purposes behind this principle, to uphold the bankruptcy laws, and which is not consistent with the purposes behind civil rights laws.[8]

Judicial estoppel should not be applied in the present case.  The defendant cannot point to any motive behind the exclusion this lawsuit from the bankruptcy petition other than simple inadvertence.  The plaintiff received no benefit from this omission and stands to lose his right to monetary damages for his claims in the present case.  If the Court were to apply the doctrine of judicial estoppel to the plaintiff in the present case, the judicial system would not benefit from this application and neither would the plaintiff's creditors; under the defendant's formulation, the defendant receives a windfall by being excused from liability of the monetary damages which would otherwise be owed to the plaintiff for Defendant's discriminatory behavior.  Therefore, such an application would only benefit Reliable who has been accused of violating Title VII and the ADEA.  As such, the Court should deny Defendant's motion for summary judgment on this issue.

Furthermore, the plaintiff's decision to pursue Chapter 13 bankruptcy instead of Chapter 7 bankruptcy serves to negate any inference of a motive to mislead the bankruptcy court about the existence of this lawsuit.  If the plaintiff were interested in concealing his claims against

---

[8] Both Congress and the Supreme Court have long recognized that private litigation would play an important role in the enforcement of Civil Rights laws.  *See Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 401, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)(stating that "[w]hen the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law.").  The Senate recognized that private citizens would have to act as a "private attorneys general."  S.Rep. 94-1011, 94th Cong., 2nd Session 1976, 1976 WL 14051, at 3.  In bringing such suits, the private citizen "vindicat(es) a policy that Congress considered of the highest priority."  *Id.*

Reliable in order to deprive his creditors of the benefit of any proceeds of those claims, he would have been better served to file under Chapter 7, in which a much more limited amount of his backpay would have been included in the estate.  By electing to pursue a Chapter 13 bankruptcy, the plaintiff's post-petition earnings are brought into his bankruptcy estate (along with any continuing claims for backpay). 11 U.S.C.A. § 1306.  Therefore, by opting for Chapter 13, the plaintiff acted in a manner which suggests he did not intend to conceal the existence of his pending administrative charge or the instant lawsuit.  Therefore, the plaintiff did not behave in a manner which would allow this Court to infer motive of intent to make a mockery of the bankruptcy court.

In *Burnes*, the Eleventh Circuit noted that it was "unlikely [the debtor] would have received the benefit of a conversion to Chapter 7 followed by a no asset, complete discharge had his creditors, the trustee, or the bankruptcy court known of a lawsuit claiming millions of dollars in damages."  *Burnes* at 1288; *Olick v. Parker & Parsley Petroleum Company*, 145 F.3d 513, 516 (2nd Cir. 1998) (The plaintiff's <u>earnings</u> are the source of the creditors' recovery in a Chapter 13 bankruptcy.)  The legislative history of the Chapter 13 provisions confirm this position:

> The benefit to the debtor of developing a plan of repayment under Chapter 13, rather than opting for liquidation under Chapter 7, is that it permits the debtor to protect his assets.  In a liquidation case, the debtor must surrender his nonexempt assets for liquidation and sale by the trustee.  Under Chapter 13, the debtor may retain his property by agreeing to repay his creditors.

H.R.Rep. 595, 95th Cong., 1st Sess, 118 (1977), U.S.C.A.A.N. 1978, p. 6079).  The facts of this case are clear, the plaintiff did not receive a benefit from failing to list his discrimination claim in his bankruptcy petition or by not immediately amending his bankruptcy petition.  The defendant can only point to some abstract motive to conceal which might exist in some cases.  Therefore,

the Court should not apply judicial estoppel to the plaintiff's claims.

**III   RELIABLE'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED, AS TO LETT'S CLAIMS OF RACE DISCRIMINATION UNDER TITLE VII AND THE ADEA.**

      **A.    Lett has established a prima facie case of race and age discrimination Reliable Has Failed to Articulate A Legitimate, Nondiscriminatory Reason for Failing to Promote Lett**.

Lett has established a prima facie claim that he was denied a promotion to the 2004 Assistant Supervisor position due to his race and age.[9]   It is undisputed that Lett is a member of a protected class, and that he sought, and was qualified for, the Assistant Supervisor position over Departments 2 and 5/4.  Reliable filled that position with Stan Henderson, a white male who is currently 34 years of age, and who is outside of the protected classes.  The decision-maker, Kenny Taylor, is a white male who is currently 39 years of age.  Accordingly,  the burden  shifts to the Reliable to articulate a legitimate, non-discriminatory reason for its failure to promote Lett. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981); *Walker v. Mortham*, 158 F.3d 1177, 1182 & fn.8 (11th Cir.1999).  Here, Reliable now maintains that in reliance on Lett's and Henderson's  work experience, and written communication skills, Henderson was better qualified based upon his written work and roles as lead-man in Departments 2, 5 and 4.  As will be explained, summary judgment is due to be denied because a genuine issue of material facts exists as to whether Reliable's articulated reasons are legitimate non-discriminatory reasons.

_____

[9]Because the analysis for both race discrimination under Title VII is the same as the analysis for age discrimination under 29 U.S.C § 621, they will be analyzed together.  *See Alexander v. Vesta Ins. Group, Inc.* 147 F.Supp.2d 1223 (N.D. Ala. 2001); *Ward v. Gulfstream Aerospace Corp., Inc.*, 894 F.Supp. 1573 (S.D. Ga. 1995).

It is well established that an employer's "explanation of its legitimate reasons must be clear and reasonably specific," and that "some proffered reasons will be legally insufficient to rebut a prima facie case." *Burdine,* 450 U.S. at 258; *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir. 1985)(emphasis added). "[T]he sufficiency of the defendant's explanation must be evaluated by the extent to which it affords the plaintiff, through the clarity and specificity of the proffered reasons, a full and fair opportunity to demonstrate pretext." *Robbins v. White-Wilson Medical Clinic, Inc.*, 660 F.2d 1064, 1066 (5th Cir. 1981), *vacated on other grounds*, 456 U.S. 969 (1982).[10]  An employer must articulate the so-called nondiscriminatory reasons properly when the reasons given are conclusory or when the defendants are unclear in explaining the reasons. *See Crawford v. Western Electric Co. Inc.*, 745 F.2d 1373, 1379-81, 1384 (11th Cir. 1984); *Blong v. Secretary of the Army*, 877 F. Supp. 1494, 1502 (D. Kan. 1995); *Eccleston v. Secretary of the Navy*, 700 F. Supp. 67, 68 (D.D.C. 1988). And, "under *Burdine*, there must be 'evidence' that the asserted reasons were actually relied on." *IMPACT v. Firestone*, 893 F.2d 1189, 1193-94 (11th Cir. 1990)(*quoting Lee v. Russell County Board of Education*), 684 F.2d 769, 775 (11th Cir. 1982)).

Decisions based on subjectivity are also suspect. *Hill v. Seaboard Coast Line R.R.*, 767 F.2d 771, 774 (11th Cir.1985). When an employer makes an employment decision based on subjective criteria, the criteria must be able to be evaluated objectively and the subjective criteria must be stated with a sufficient degree of particularity. *Chapman v. AI Transport*, 229 F.3d

-----

[10] For example, Federal courts agree that "'[g]eneral assertions of good faith or of hiring only the best applicants . . . are insufficient.'" *Pitre v. Western Electric Co.*, 843 F.2d 1262, 1266 (10th Cir. 1988)(*quoting Payne v. Travenol Laboratories, Inc.*, 673 F.2d 798, 817 (5th Cir. 1982)); *see also Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 109 (1st Cir. 1988).

1012, 1034-35 (11th Cir. 2000); *Conner v. Fort Gordon Bus* Co., 761 F.2d 1495, 1500 (11th Cir.

1985);*Woody v. St. Clair County Comm'n*, 885 F.2d 1557, 1562-63 (11th Cir. 1989); *EEOC v.*

*Joe's Stone Crab, Inc*., 220 F.3d 1263, 1280 (11th Cir. 2000).

   Finally, the articulated rationale, but the articulation of that reason must be accurate and it

must include facts the decision-maker was aware of at the time the decision was made." *Hill v.*

*Seaboard, supra.. Turnes v. AmSouth Bank, N.A.*, 36 F3d 1057, 1061 (11th Cir. 1994).

   Here, Reliable has failed to articulate a non-discriminatory reason because it relied too

heavily on vague and subjective criteria.  Reliable takes the position that Henderson had more

work experience and had better written communication skills as the basis for its decision.

(Taylor p.95-96 lns.13-8).  However, Lett's employment experience could not be articulated by

the decision maker, except that Lett had been the lead-person in Department 2.  (Taylor p.13

lns.5-7, p.39 lns.19-22, p.40 lns.5-21, p.103 lns.9-17).

   Additionally, Lett and Henderson's work experience and written communication skills

      lend

themselves to a subjective analysis;  as Defendant has failed to put forth any specified evidence

of Lett's alleged  deficiencies. Any statements about Lett's  skills and/or experience in these

areas are so vague as to deprive Lett of a reasonable opportunity to rebut the evidence.  Likewise,

Taylor's reasoning that Lett's written communication skills were lacking, is entirely subjective

and Taylor was unable to articulate why he had never notified Lett of his deficiencies in his

written communication skills during the five years Taylor had been reviewing Lett's written

evaluations of his 30 employees.  (Taylor pp.95-96 lns.14-8, p.97 lns.1-5, pp.112-13 lns.7-10,

p.116 lns.9-17).

In Defendant's Motion for Summary Judgment, it failed to offer into evidence anything that shows Lett's written communication deficiencies except, arguably, Lett's answers to the four questions submitted by the candidates.  *See* Def. Exh. 4.  However this evidence is due to be discounted and not considered by this court because Taylor, in making his decision to select Henderson over Lett, testified that the questions and the corresponding answers submitted by the candidates, were not considered by Taylor in his decision to choose Henderson.  (Taylor p.37 lns.20-23, p.95 lns.7-10).  Since Reliable has failed to identify the reason why Lett was deemed to have inferior job experience with sufficient detail, other than Henderson had more experience in certain departments where Lett's employment history was never considered, Defendant's articulated reason must be rejected.  (Taylor p.13 lns.5-7, p.39 lns.19-22, p.40 lns.5-21, p.103 lns.9-17).  Further, Lett was not offered the same opportunities to be "groomed" for the assistant's supervisor's position as Henderson was despite Lett's service years and supervisory experience as lead-man in Department 2.  (Taylor p.38 lns.10-19, p.53 lns.5-8, p.54 lns.5-11, p.99 lns.1-12, p.100 lns.8-16).

Despite Lett's opinion, Lett has presented evidence that he was better qualified than Henderson as far as the actual job of Assistant Supervisor is concerned.  Lett had over thirty-years experience with Reliable, and, undisputedly,  performed his job well as a lead man in Department 2 supervising approximately 30 employees. (Taylor p.82 lns.11-23, p.83 lns.1-14).  In addition to generally supervising employees, the assistant supervisor for Departments 2 and 5/4 is expected to: chase down orders, check up on orders, make sure orders are being worked on, ship orders, work with the paint shop, and track orders that have not been shipped to find out why they have not been shipped.  (Taylor p.84 lns.6-13).  In the absence of the supervisor, the

assistant supervisor is responsible for reporting hours, and making sure employees are following the work orders submitted with the proper employees in the proper positions completing work in the correct order. (Taylor p.84 lns.13-18). In addition to Taylor's admission that Lett was qualified for the job, it is undisputed that Lett is qualified to perform these duties. Arguably Lett is more qualified to perform the job based on his ten years experience as a supervisor of approximately thirty employees coupled with his twenty years of work experience in Department 4. (Lett p.52 lns.11-13; Taylor p.73 lns.20-23, p.97 lns.9-15).

Henderson has served a lead-person over Departments 2, 4, and 5, however, he has only supervised approximately ten employees at any given time in his lead-man roles. (Henderson p.61 lns.8-12). Further, Henderson testified that he still has to ask questions after nearly 2 years on the job as assistant supervisor, regarding how the work is to be done in the various departments and how his role as assistant supervisor is to be performed. (Henderson p.38 lns.3-8). Additionally, Taylor could not testify as to whether Lett worked in other departments or how much Lett had worked in other departments aside from Department 2 because he never investigated this matter. (Taylor p.39 lns.19-22, p.40 lns.14-21, p.103 lns.15-18). Seemingly, Taylor did nothing more than simply hand-pick Henderson for the job.

Taylor never identified any task that Henderson could do better than Lett except point to Henderson's written communication skills, and Defendant failed to offer into evidence anything showing that written communication was a significant part of the assistant supervisors position or anything showing that Lett's written communication skills were so inferior to Henderson's that Lett should not have been promoted. In fact, beginning in 2000 when Taylor began completing evaluations on Lett, he scored Lett as "meeting expectations" and/or "effective" in the category

of written communications and additionally weighed the communications category as one of the least important categories upon which the evaluation was done. *See* Exb. 7. In 2004, Taylor rated Lett's written communication skills as a 3.0 or "effective". *See* Exb. 8.

Taking all of the evidence in the light most favorably to Lett, a reasonable jury could find that Lett's written communication skills and work experience were **not** motivating factors because Henderson had fewer service years and his experience in the company has not differed vastly from Lett's working experiences despite Taylor's oversight and/or lack of investigation into Lett's work experiences. This is true especially in light of the fact that there has not been an African American supervisor during Lett's 33 year employment history with Reliable. (Taylor p.49 lns.14-18; Lett p.119 lns.1-2).

In summary, Lett's prima facie case stands unrebutted, and he is entitled to judgment on this issue as a matter of law. *Burdine*, 450 U.S. at 254.

### B. Even If Reliable Has Proffered a Legitimate, Nondiscriminatory Reasons, the Evidence Shows Any Such Reason to Be Pretextual

Assuming arguendo, that Reliable has articulated a legitimate non-discriminatory reason for promoting Henderson, summary judgment is still inappropriate because Lett has put forth evidence demonstrating pretext.[11]  *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1564 (11th

---

[11]Lett may also present evidence that the reason proffered ─ whether true or false ─ did not actually motivate the defendant, by pointing to "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons ...that a reasonable fact-finder could find them unworthy of credence...The trier of fact may infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Hamilton v. Montgomery County Bd. of Educ.*, 122 F.Supp. 1273, 1281 (M.D. Ala. 2000) (citations omitted). Lett may also show that Defendant's proffered explanation is unworthy of credence. *Texas Dep't of Community Affairs*, at 256. *See also Wu v. Thomas*, 847 F.2d 1480 (11th Cir. 1988). *See Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 633-34 (7th Cir. 1996).

Cir. 1995). Lett's evidence demonstrates that Reliable's rationale is false and unworthy of belief, and that it is fraught with inconsistencies and weaknesses. Taking all of the evidence in the light most favorable to Plaintiff, a reasonable person could find that Reliable's true motive was discriminatory and was based on Lett's race and age.

First, as discussed in the previous section, an examination of the total record demonstrates that Reliable's assertion that Henderson was more qualified is a question of fact for the jury to decide. Indeed, how reasonable is it that Henderson, a person who has only supervised one-third of the amount of people that Lett supervised at any given time, was more qualified than a good employee with eighteen years seniority and ten years experience supervising approximately thirty employees? If Henderson was so much more qualified, why did Reliable place Lett in the lead-man position, continue to tell Lett that he was doing a good job, and to keep on doing what he is doing in order to be considered for a supervisors position. (Lett p.71-2 lns.8-5).[12]   Reliable's comparison of Lett and Henderson's written communication skills is also flawed as, *inter alia*, Reliable never disciplined Lett for his lack of written communication skills, and evaluated his skills as meeting expectations or satisfactory. *See* Exb. 7 and 8.

Further, Reliable's failure to post the Assistant Supervisor's position or any supervisory position demonstrates pretext. (Taylor p.76 lns.18-20; Lett p.215 lns.1-4).   It is well settled that a position which is not posted creates an inference of discrimination. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126 (11th Cir. 1984); *Lilly v. Flagstar Enter, Inc.*, 2001 WL 849537

---

[12]Lett questioned Roger Peak, the plant manager for the architectural side of the plant, after Taylor was promoted to Assistant Supervisor in 1999 as to what he needed to do in order to be considered for a supervisors position. Lett testified that Peak told him he was not selected for the job because Taylor was supervising so few people. (Lett p.71-72 lns.8-5). Significantly, nothing was mentioned at this time regarding Lett's performance.

(M.D. Ala. 2001).  *See also, Griggs v. Duke Power,* 404 U.S. 424 (1971).

The fact that Reilable's current articulated reasons are different than its previous articulated rationales also suggests pretext.  On February 8, 2005 in Defendant's **second** response to the EEOC,[13] Defendant told the EEOC that it based its decision on Lett and Henderson's answers to the four written questions, and Lett's record of counseling.  *See* Exb. 6.  During his deposition, however, Taylor flatly denied that he utilized any of the answers submitted by the candidates.  (Taylor p.37 lns.20-23).  Taylor's testimony of the factors which influenced his decision to choose Henderson over the Plaintiff were not the same as Defendant's EEOC responses, as articulated by Taylor in his deposition.  Specifically, Taylor testified:

Q. You looked at–what–why did you select Stan Henderson over Frank Lett for the assistant supervisor position?

A: Because of the job knowledge and experience that Stan had on all the other lines.

Q: That's your reason?

A: That's the main reason, yes.

Q: Is that the only reason?

A: And he also has good communication skills.

Q: You had seen that over the years.

A; Yes.

_____

[13]In Defendant's first response to the EEOC, they responded to the wrong position. Specifically, Plaintiff alleged in his EEOC charge that he had been passed over for a position that he was better qualified for on October 4, 2004.  *See* Exb. 5.  Significantly, and incorrectly, Defendant's response states that only one type of grill is manufactured in Department 2, and further that the lead person position is equivalent to the assistant supervisor's position.  *Id*. at 2 lns.6 and 10-11.  If this the lead person position is the same as an assistant supervisor position, then the pay should be equal.

Q: Any other reasons?

A: Thais pretty much it– that's it.

(Taylor p. 95-96 lns. 13-8.)

Thus the reasons proffered to the EEOC as to why Henderson was selected over Lett are inconsistent and lend themselves to showing pretext of a discriminatory animus.[14]  It is well settled that shifting and inconsistent rationales regarding an employer's motivation lends to a reasonable inference of pretext.  *Zaccagnini v Chas. Levy Circulating Co.,* 338 F.3d 672 (7th Cir. 2003).  *Dominguez-Cruz v. Shuttle Carbie Inc.,* 202 F.3d 424, 431-433 (1st Cir. 2002)  *Seigal v. Alpha Wire Corp.,* 894 F.2d 50, 55, (3rd Cir. 1990). *Marsh v. Hoggslatt, Inc.,* 79 F.Supp. 2d Edition 1068, 106901080 (N.D. Iowa 2000).  *LaPierre v. Benson Nisan, Inc.,* 86 F.3d 444 (5th Cir. 1996).   Here, Reliable's inconsistent statements about its motivation could be reasonably interpreted to mean that it was actually motivated by a bias against Lett's age and race. Accordingly, taking this evidence in the light most favorable to Lett, summary judgment should be denied.

Finally, Reliable's history of failing to place African-Americans in supervisory positions is also evidence of pretext.  Lett has presented evidence that from at least 1973 until the present, Reliable historically has failed to place African-Americans in supervisory and/or management positions.  (Taylor p.49 lns.14-15).  A thirty-year history of failing to include African-Americans

_____

[14]Defendant raises Lett's employee discipline as a factor in not choosing him for the Assistant Supervisor's position in its motion for summary judgment, as insignificant as the employee discipline is, this factor should not be considered by this Court, as the decision maker, Taylor, testified that only work experience and written communication skills were considered in choosing Henderson over Lett.  (Taylor p. 95-96 lns. 13-8; *see also* Def. Exb. 17).  The record is devoid of any disciplinary write-ups pertaining to Lett's work product or performance throughout his career at Reliable.

21

in meaningful positions is evidence of Reliable's discriminatory animus.

Perhaps, nowhere is this pattern more evident than in Reliable's refusal to promote Lett to the position of Assistant Supervisor. Lett has a over a thirty-year history with Reliable. It is undisputed that he has performed his position well. Given the totality of the evidence in this case, the reasonable inference is that the true reasons Reliable has refused to promote Lett, are Lett's race and age.

## IV.    GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON LETT'S DISCRIMINATION IN PAY CLAIM UNDER 42 U.S.C. § 1981.

To establish a *prima facie* case for a claim of discrimination in pay the plaintiff must show that he was an African-American and that he was paid less than white employees in substantially similar jobs. Mulhall v. Advance Security, Inc., 19 F.3d 586, 598 (11th Cir. 1994). Lett has presented evidence that he was paid less than Steve Paulk is a white male in a substantially similar position. *See* Exb. 2. Paulk was hired in 1979 and at the time of the pay disparity during 2004/2005, he had been in the lead person position in Department 3 for ten years. Paulk was being paid $14.73 per hour. Lett was employed by Reliable in 1973, at the time of the pay disparity he had been serving in the lead person capacity for ten years, however he was being paid $14.61. The job duties in both lead person positions included supervising employees, ensuring work is completed in a timely fashion, and that all materials are available for the employees to complete the tasks. (Lett p.53 lns. 7-21, *see also* Exb. 1). In February 2005 Paulk received an anniversary merit increase to $14.73 per hour. Lett, however was making $14.61 per hour, was denied the anniversary merit increase and was told that in addition to the pay freeze which was in effect, that he had reached the top of the pay scale for his position. (Lett

22

p.56 lns.9-16; *see also* Exb. 1).  From 1994 until 2004, both the plaintiff and Paulk performed the same duties except in different departments.

Defendant simply contends that Lett's disparate pay claims are based solely on an inadvertent mistake.  However, this is an issue of credibility which should not be decided at this stage in the proceedings.  The record reflects that Lett's pay claims are supported by the pay history of Paulk and the deposition testimony of Lett.  Thus, because plaintiff has produced evidence of a pay disparity between Paulk and Lett, summary judgment is due to be denied on Lett's pay claim.

## V.     CONCLUSION

For the foregoing reasons, summary judgment is due to be denied on Frank Lett's discrimination in promotion claim, pay claims, and his claims should not be judicially estopped from proceeding.

Respectfully submitted,

    /s/ Allison W. Lowell
Allison W. Lowell, Esq. (ASB-6373-A40W)
C. Michael Quinn, Esq. (ASB-2365-642C)
Attorneys for Plaintiff

**OF COUNSEL:**

WIGGINS, CHILDS, PANTAZIS & QUINN, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jonathan S. Harbuck, Esq.
Elizabeth P. Odom, Esq.
THE KULLMAN FIRM
A Professional Law Corporation
600 University Park Place, Suite 340
Birmingham, Alabama 35209-5786

Dated the <u>18th</u> day of <u>May</u>, 2006.

/s/Allison W. Lowell
OF COUNSEL